### HOME MUTUAL LIFE ASS'N v. HODGES.

No. 26976. May 10, 1938.

Rehearing Denied June 7, 1938.

Application for Leave to File Second Petition for Rehearing Denied June 14, 1938.

R. E. Bowling, for plaintiff in error.

L. V. Reid, Rayford S. Reid and Blanton, Curtis & Blanton, for defendant in error.

BAYLESS, V. C. J. In its certificate dated December 5, 1933, Home Mutual Life Association, a mutual benefit association organized and operating under the laws of this state, agreed, upon receipt of due and satisfactory proof of the death of James W. Hodges, to pay to his wife, Elnora Hodges, the sum of $1.000, provided the death of the said James W. Hodges occurred while the certificate was in force. Hodges died on March 2, 1934. And thereafter, in due time, satisfactory proof of his death was submitted to the association at its home office in Pauls Valley. Okla. The association, however, failed and refused to pay the face amount of the certificate, or

any part thereof, but tendered to Elnora Hodges $6.40, the amount of premiums paid on the certificate, which tender she refused.

Thereafter, on December 22, 1934, and declaring upon the certificate aforementioned, Mrs. Hodges commenced this action in the court below with a view to having judgment against the association for the face value of said certificate with interest thereon from May 24, 1934, until paid. Issues were made in the action. And on the trial which followed a verdict was returned awarding the plaintiff the full amount for which she had sued. From the verdict and the judgment rendered thereon, the association has appealed.

In its answer the association admitted that it issued the certificate declared upon, and alleged that application for said certificate was made December 2, 1933, by James W. Hodges, and that said application constituted a part of the contract for insurance; that the application as made by James W. Hodges contained the following:

"It is understood and agreed * * *: 1. That the certificate issued on this application is subject to the by-laws (as they are now and as they may be amended in the future) of the Association, the same being on file in the office of the State Insurance Commissioner. * * * 3. That this application shall become a part of the contract for insurance, and, should it develop that the applicant * * * has knowingly misrepresented any material fact as to the condition of health of * * * applicant in order to obtain a certificate * * *, the said certificate shall become void. * * *"

And that the by-laws, referred to in said application, provided that:

"Should any person make, or cause to be made, any false or untrue statement, material to the acceptance by this Association, of the risk in any application for membership in this Association, * * * all membership certificates issued thereon shall become null and void as of the date issued * * * and the liability thereunder, on the part of the Association, shall be the return of the assessments paid thereon."

Following which, it was alleged: That the application made by James W. Hodges contained the question: "Are you in good health?" and that Hodges had therein answered "Yes"; which answer, it was alleged, was untrue and made by Hodges with full knowledge of its untruthfulness, and further, "that said statement was made to obtain the certificate of insurance of misrepresentation and fraud," for that at the date of said application James W. Hodges was "sick" and had been "sick" for some time prior thereto; "that his illness was tuberculosis of lungs and larynx which caused his death on March 2, 1934"; and therefore, that the certificate sued upon was null and void.

For reply the plaintiff made general denial.

With regard to the alleged illness of James W. Hodges at the date of his application for the insurance, and prior thereto, the record before us does not disclose any evidence which might be said as tending to establish that Hodges knew or had any reason to believe that he then had tuberculosis as alleged by the association. And we find no evidence in the record tending to establish that at the time he did in fact have tuberculosis. From the record it appears: That on December 2, 1933, when Hodges applied to the association for the insurance, he was of the approximate age of 43 years; that at the time, and for 16 years prior thereto, he was in the employment of an oil company, working in the Healdton field in Oklahoma, and residing in the town of Healdton; that prior to December 2, 1933, he had lost no time from his work on account of being ill, but on that date, upon his failing to appear for work, the oil company's time records were made to show that he was "off sick"; and after that date he did no further work for the oil company.

Dr. John R. Pollock, a physician and surgeon practicing his profession at Ardmore, Okla., and witness on behalf of the association, testified that he examined Hodges on September 30, 1933, and found his general health to be good, but did find him to then have a "sore throat with laryngitis." In describing the condition of Hodges' throat as he then found it, he stated: "He had a sore, rather small one, which had diseased one-half of his tonsil on one side, very little swelling, very little redness and not much soreness." Dr. Pollock further testified that he thereafter, at intervals of from three to six days apart, treated Hodges' throat condition until December 9, 1933, and that there was no "marked change in his condition"; that "his throat did not get well," but that at no time did Hodges have any fever or complain of any pain; that on December 9th he advised Hodges to go to Oklahoma City and consult certain doctors there, and that he did not see Hodges any more after that date. It appears that thereafter Hodges went to Oklahoma City and there consulted the doctors whom Dr. Pollock had recommended, but what examinations and treatments he there had, if any, and the find-

ings and results thereof, are not shown in the record.

According to the record, Hodges entered a hospital at Talihina, Okla., the latter part of January or the first part of February, 1934, where he remained until his death on March 2, 1934. But the association produced no medical or expert testimony at the trial in the court below to show or establish the cause of Hodges' death, or that he died of tuberculosis. The only evidence which the association did introduce in that regard (and this over the plaintiff's objection) was the "Proof of Death" which Mrs. Hodges had signed and submitted to the association after the death of her husband. In said instrument it was recited that the death of James W. Hodges "was a result of tuberculosis of throat and lungs." But it was subsequently developed by the association's counsel through his cross-examination of Mrs. Hodges, that the statements in the instrument were prepared by some other person whose identity she did not know, and that while the statement was made therein that Hodges' death was the result of tuberculosis, she did not herself know such statement to be a fact.

The association complains of certain of the instructions which were given by the trial court, and of the refusal of said court to give certain requested instructions. It is a settled rule in this jurisdiction that instructions must be considered as a whole and construed together. In Ponca City Ice Co. v. Robertson, 67 Okla. 86, 169 P. 1111, it was said:

"It is a general rule upon reason and experience that instructions must be * * * construed together, and that no particular one should be singled out to the exclusion of another, and that where instructions when taken together and considered as a whole fairly present the law of the case, and there is no conflict between the different paragraphs thereof, this will be sufficient."

See, also, to same effect, White v. Little, 131 Okla. 132, 268 P. 221, and City of Edmond v. Billen, 171 Okla. 90, 42 P.2d 253.

Having examined the instructions given by the trial court, we are of the opinion that same were proper under the issues made by the pleadings and fairly cover the facts and the law governing the case; and that no reversible error appears from the giving of the instructions complained of and of the refusing to give the requested instructions of the defendant.

The association also complains to the effect that the verdict of the jury was not sustained by sufficient evidence, and was contrary to law. So far as this contention is concerned, it need only be said that the record before us discloses ample evidence to support the verdict. In a law action, where there is competent evidence reasonably tending to support a verdict and no prejudicial errors are shown in instructions or rulings upon law questions, the jury's verdict and findings are conclusive. Guaranty State Bank of Texola v. Rutledge, 179 Okla. 85, 64 P.2d 650.

Finding no prejudicial error in the record, the judgment of the trial court is affirmed.

Judgment affirmed.

RILEY, PHELPS, GIBSON, and HURST, JJ., concur.